UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARD OF TRUSTEES OF THE EMPLOYEE PAINTERS' TRUST et al., <br><br> Plaintiffs, <br> v. <br><br> D & R GLAZING, INC. et al., <br><br> Defendants. | CASE NO. 2:22-cv-01831-LK <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT |

      This matter comes before the Court on Plaintiffs' Motion for Default Judgment. Dkt. No. 13. Plaintiffs seek to audit the payroll records of Defendant D & R Glazing, Inc. and to recover damages and other sums of money based on delinquent employee benefit contributions from the company and its corporate governor, Peggy Owens. Neither Defendant has appeared or defended in this action. For the reasons set forth below, the Court construes the motion as one for partial default judgment and grants the motion in part and denies it in part.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 1

## I. BACKGROUND

Plaintiffs Board of Trustees of the Employee Painters' Trust, Board of Trustees of the Western Glaziers Retirement Fund, Board of Trustees of the District Council No. 5 Apprenticeship and Training Trust Fund, Board of Trustees of the Washington Construction Industry Substance Abuse Program, and Board of Trustees of the Painters and Allied Trades Labor Management Cooperation Initiative (collectively, "the Trusts"), are trusts created pursuant to written trust agreements between various unions, including the International Union of Painters and Allied Trades District Council No. 5 (the "Union"). Dkt. No. 1 at 3. The Trusts provide employee benefits to plan participants under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and were created pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c) ("LMRA"). *Id.* The Union is a labor organization representing employees in the glazing and construction industry in Western Washington and surrounding areas. *Id.*

Defendant D & R Glazing, Inc., doing business as Don's A-1 Glass Service ("D&R"), is an Oregon corporation authorized and registered to do business in Washington, and Peggy Owens serves as one of its principals. *Id.* at 4.[1] At all times relevant to this dispute, D&R was a signatory to agreements with the Union; specifically, it agreed to be bound to the terms and provisions of a collective bargaining agreement ("CBA") and certain trust agreements. Dkt. No. 1 at 4–5. The Trusts allege that the CBA has not been terminated by any party. *Id.* at 5. Among other things, the CBA and trust agreements obligate D&R to submit monthly reports showing the hours worked by its employees for covered work performed under the CBA, including for all glazing work. *Id.* Likewise, D&R is obligated to pay the Trusts "fringe benefit contributions, benefits, dues and/or withholdings for health, welfare, pension, retirement, training, and other employee benefits on a

---

[1] The Trusts voluntarily dismissed Frank Calvin, another alleged corporate governor of D&R, on January 18, 2023. Dkt. No. 8.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 2

1   monthly basis and at specified rates for each and every hour of glazing work performed that is
2   covered by the CBA." *Id.* at 5–6. The CBA also enables the Trusts to audit D&R's payroll books
3   and records as necessary. *Id.* at 6.

4   According to the complaint, D&R made late monthly contribution payments from April
5   2022 through September 2022, failed to submit reports or pay contributions for the months of
6   October and November 2022, and failed to provide records for completion of an audit. *Id.* at 6, 9.
7   The Trusts initiated this action in December 2022, asserting causes of action for breach of contract
8   and corresponding violations under ERISA, 29 U.S.C. §§ 1132(g)(2), 1145. *Id.* at 7–11. The Trusts
9   seek to recover contributions owed and related relief, including interest, liquidated damages,
10  attorney's fees, and an order compelling D&R to undergo an audit. *See id.* at 6–12.

11  After the Trusts effectuated service and Defendants failed to appear or defend in this action,
12  the Clerk of Court entered default and the Trusts moved for default judgment. *See* Dkt. Nos. 6–7,
13  12–13. As explained below, this motion is really one for partial default judgment.

## II.  DISCUSSION

### A.  Subject Matter and Personal Jurisdiction

The Court has subject matter jurisdiction over the Trusts' claims pursuant to Sections 502 and 515 of ERISA. 29 U.S.C. § 1132(e)(1) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title."); *Id*. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."); *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771,

776 (9th Cir. 2009) (explaining that Section 1145 provides a federal cause of action to enforce preexisting obligations created by collective bargaining agreements). Trust funds, including the Trusts in this case, can bring claims as fiduciaries under sections 1132 and 1145. *See, e.g.*, *Locals 302 & 612 of the Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v. Barry Civil Constr., Inc.*, No. C16-0404-JPD, 2016 WL 4528462, at *3 (W.D. Wash. Aug. 29, 2016); *Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. Adam Moreno & Sons, Inc.*, No. 20-cv-09155-TSH, 2021 WL 8153587, at *7 (N.D. Cal. July 8, 2021), *report and recommendation adopted*, 2021 WL 8153573 (N.D. Cal. Aug. 16, 2021).

The Court also has personal jurisdiction over D&R and Owens. Personal jurisdiction over a defendant may be acquired by personal service on that defendant, *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992), and the Trust Funds' service of the summons and complaint on D&R and its corporate governor, Owens, sufficiently establishes personal jurisdiction in this case. Dkt. Nos. 6–7, 11; *see also* 29 U.S.C. § 1132(e)(2) (authorizing nationwide service of process).

Venue is proper in this district under 29 U.S.C. § 1132(e)(2) because the breach took place in this district and the Trusts are administered in this district. Dkt. No. 1 at 2.

**B.     Legal Standard**

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55 authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. The Court has discretion to grant or deny a motion for default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider

the following factors (the "*Eitel* factors") in deciding whether to grant a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). However, the plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Accordingly, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267.

**C.     The Court Grants the Trusts' Request to Compel an Audit, but Denies the Remainder of the Motion**

It is difficult to decipher what relief the Trusts seek in their motion. The Trusts proclaim that they "seek liquidated damages," but "[b]ecause the precise amount of liquidated damages will not be known until an audit of [D&R]'s payroll and related records is completed," they do not seek any now. Dkt. No. 13 at 8. The Trusts also "seek interest on unpaid contributions," but similarly, "[b]ecause the precise amount of interest will not be known until an audit is completed," they do not seek any now. *Id.* Apparently, D&R has admitted that it failed to pay fringe benefit contributions of $25,766.90, *id.* at 4, but the Trusts do not seek that amount either; instead—and despite D&R's "admission"—"the full extent of the contributions due and owing to the [Trusts] cannot be determined until [D&R] submits its payroll and related records for an audit[.]" *Id.* at 6. So too with respect to audit costs. *Id.* at 9.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 5

Despite these disclaimers, the Trusts ultimately ask for default judgment for "currently known amounts of contributions, liquidated damages, interest, fees and costs," and "[f]or known contributions, liquidated damages, and interest on the Prior Audit in the amount of $290.16." *Id.* at 17. To the extent the "currently known" amount differs from the $290.16 figure, the motion does not explain how. Compounding the confusion, the Trusts' proposed order awards them $219.24 in contributions from the Prior Audit, $808.43 in liquidated damages, and $388.99 in interest. Dkt. No. 13-1 at 2. Aside from these requests, the Trusts seek (1) an "interim award" of attorney's fees and costs and (2) an audit. Dkt. No. 13 at 9.

These requests do not "fit squarely under any rule of civil procedure." *Nw. Adm'rs, Inc. v. Nat'l Express Transit Servs. Corp.*, No. 2:19-cv-00744-WBS-AC, 2019 WL 3986807, at *3 (E.D. Cal. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL 4412389 (E.D. Cal. Sept. 16, 2019). The motion effectively seeks partial default judgment because the Trusts seek only a portion of the relief requested in their complaint, and an entry of default was properly entered against Defendants. Therefore, the Court construes the Trusts' motion as one for partial default judgment under Rule 55. *See, e.g.*, *id.*; *Trs. of Bricklayers & Masons Loc. No. 22 Pension Plan v. 5 Star Masonry LLC*, No. 3:20-CV-398, 2021 WL 215649, at *1 (S.D. Ohio Jan. 21, 2021).

The Court first explains why an award of contributions, liquidated damages, interest, fees, and costs is not warranted. It then addresses the Trusts' request for an audit.

1. <u>The Court Denies the Trusts' Request for Contributions, Liquidated Damages, and Interest from the Prior Audit</u>

The Trusts seek to recover delinquent contributions, liquidated damages, and interest from D&R for hours worked in March 2021 following a "Prior Audit" for the time period between October 2020 through March 2022. Dkt. No. 13 at 5, 17; Dkt. No. 13-1 at 2; *see also* Dkt. No. 16

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 6

at 4 (claiming that D&R owes $290.16 for delinquent fringe benefit contributions, liquidated damages, and interest for March 2021); Dkt. No. 16-1 at 2–4 (same); Dkt. No. 17-3 at 2 (same).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also* LCR 55(b). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against [him] so that he may make a calculated decision as to whether or not it is in his best interest to answer." *Sacramento Area Elec. Workers Health & Welfare Tr. v. FAMCO*, No. 17-CV-03823-BLF, 2019 WL 13203780, at *2 (N.D. Cal. Nov. 20, 2019) (citation omitted). And while "[c]ourts in the Ninth Circuit have made a limited exception to this requirement for delinquent contributions that come due *after* a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA," such exception does not apply where "the contribution was delinquent at the time the complaint was filed[.]" *Bay Area Painters v. Alta Specialty*, No. C06-06996-MJJ, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008). Here, the Trusts do not request relief related to the Prior Audit in their December 2022 complaint, even though they appear to have had knowledge of D&R's delinquency as early as July 2022. *See generally* Dkt. No. 1; *see also* Dkt. No. 16-1 at 2–4. In addition, the Trusts' proposed order deviates not only from the complaint, but from the Trusts' motion too. It suggests an award of $219.24 in contributions from the Prior Audit, $808.43 in liquidated damages, and $388.99 in interest. Dkt. No. 13-1 at 2. These figures are entirely absent from the complaint and motion.[2] Adding to the confusion, a declaration purportedly supporting the motion states that "[t]he total interest amount due is $359.73." Dkt. No. 17 at 6.

Consistent with Rule 54(c), the Court declines to entertain relief sought in the Trusts' motion and proposed order that differs from what is demanded in their pleadings. *See Pioche Mines*

---

[2] These numbers appear in an exhibit attached to the motion, Dkt. No. 17-3 at 2–3, but do not appear in the motion itself.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 7

*Consolidated, Inc.*, 333 F.2d 257, 272 (9th Cir. 1964) (district court erred by awarding relief that was not requested in the "prayer of the complaint"); *Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *7 n.4 (W.D. Wash. Jan. 31, 2022) (denying relief requested in motion and proposed order that differed from that requested in the complaint); *Aminov v. EC Commodities Corp.*, No. C16-4800-AMD-SMG, 2018 WL 542245, at *2 (E.D.N.Y. Jan. 24, 2018) (adopting magistrate judge's recommendation that plaintiff's claim be denied because he raised it for the first time in his motion for default judgment); *Tragni v. Souther Elec. Inc.*, No. C09-32-JF-RS, 2009 WL 3052635, at *3 (N.D. Cal. Sept. 22, 2009). The Trusts are not entitled to delinquent contributions, liquidated damages, or interest premised on the results of the Prior Audit.

The Trusts are further cautioned that the Court will deny requests for default judgment where plaintiffs "make little effort to explain their calculations" and do not "show their work[.]" *Bd. of Trs. of Locs. 302 & 612 of Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v. RG Constr., Inc.*, No. 2:21-CV-01313-LK, 2023 WL 2741928, at *4 (W.D. Wash. Mar. 31, 2023).

    2. <u>An Award of Fees and Costs is Not Warranted at this Juncture</u>

Although the Trusts acknowledge that the legal fees in this case will continue to accrue, they seek $8,852.71 in attorney's fees as part of the instant motion. Dkt. No. 13 at 18; *see id.* at 9 ("Because this litigation will not end until an audit is completed, the Plaintiffs will request an interim judgment on fees and costs now and will request an additional amount of fees and costs following completion of the audit."). The Trusts submit declarations from attorneys Michael A. Urban and Wesley J. Smith in support of this request. Dkt. Nos. 14–15. Putting aside the inefficiencies in assessing fees and costs in a piecemeal fashion as the Trusts request, their submissions with respect to their request for fees and costs are deficient.

The Court first observes that, in addition to the numerous careless mistakes in the motion

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 8

and attached documents discussed above, some of the Trusts' motion appears to be recycled content from other motions. For example, the motion states that Defendants "evaded service in this matter, which caused alternative service to be necessary." Dkt. No. 13 at 15. There is no evidence of this in the record, indicating that this content may be carryover from a prior, similar motion for which the Trusts' counsel presumably already billed a client. Copy and paste may also be to blame for the Trusts' dual requests for "currently known amounts of contributions, liquidated damages, interest, fees and costs," and "[f]or known contributions, liquidated damages, and interest on the Prior Audit in the amount of $290.16." *Id.* at 17. Time spent on duplicative, unproductive, excessive, or unnecessary work is not compensable. *Hensley v. Eckerhart*, 461 U.S. 424, 432–33 (1983); *see also, e.g.*, *Eve Nevada*, 2022 WL 279030, at *10 (reducing fees for recycled work).

Next, Mr. Urban's billing summary combines costs, attorney fees, and paralegal fees without a clear delineation among them. Dkt. No. 14-1 at 2–17. It appears that costs span the first two and a half pages of the summary, but there is no explanation for the cost entries other than generic descriptions such as "postage." *See id.* at 2–4. Mr. Urban also unhelpfully declines to provide the total hours he worked on the matter, and mixes entries from various paralegals with his own. *See id.* at 4–17. This makes it difficult for the Court to evaluate the reasonableness of each individual's time entries. And the Court is unable to decipher what the $865.57 in requested costs are comprised of based on the Trusts' filings.

Although Mr. Smith's submission specifies the total number of hours worked (18.60), Dkt. No. 15 at 3, 11, it appears to include hours billed for work on matters that predate the claims alleged in the Trusts' complaint, *see id.* at 2 ("As collection counsel for the Plaintiffs, Defendants were first referred to CJM for a missing remittance report for work performed in November 2021, and CJM first billed the Plaintiffs for work on this matter in January 2022."); *id.* at 7–8 (requesting

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 9

$999 in fees for 5.4 hours spent between January 12, 2022 and May 20, 2022 on matters relating to reports between November 2021 and February 2022). In addition, the total fees and costs requested by Mr. Urban ($5,827.07) and Mr. Smith ($3,441.50) add up to $9,268.57, which is less than the amount requested in the Trusts' motion ($9,718.28). *See* Dkt. No. 14-1 at 17 (Mr. Urban); Dkt. No. 15 at 11 (Mr. Smith); Dkt. No. 13 at 18 (the Trusts' motion).

Moreover, the majority of the fees incurred relate to claims the Trusts have not yet asked the Court to rule upon. District courts "have a *duty* to ensure claims for attorneys' fees are reasonable," and, particularly in default actions, "a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer[.]" *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018) (quoting *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993)). The Trusts have not yet prevailed on the majority of their claims. And given the mistakes of counsel thus far, it would be imprudent to forecast the degree of success on these claims. *Hensley,* 461 U.S. at 434 ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'").

These may not be the only shortcomings with respect to the Trusts' request for fees and costs, but the Court declines to wade further into the potential deficiencies. The Court denies the Trusts' request for fees and costs. The Trusts may file another request for fees and costs should they choose to file a motion for default judgment following the audit. However, the Court reminds the Trusts that it "will not award fees incurred as a result of . . . correcting mistakes." Dkt. No. 9 at 9.

3. The Court Grants the Trusts' Request to Compel an Audit of D&R

The Trusts seek partial default judgment in the form of an order "compelling the Defendants to submit D&R's payroll and related records to the Plaintiffs and their auditors for

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 10

completion of a current compliance audit[.]" Dkt. No. 13 at 17; *see also id.* at 5–6; Dkt. No. 1 at 10–11. The Court has considered the *Eitel* factors and finds that compelling an audit is appropriate in this case for the reasons discussed below.

### *(a) The Possibility of Prejudice to the Trusts*

"[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation and internal quotation marks omitted). Defendants have failed to respond to this action, so default judgment is the Trusts' only means for relief. *See Eve Nevada*, 2022 WL 279030, at *3. And because Defendants have refused to cooperate in a required audit, Dkt. No. 1 at 9–10; Dkt. No. 17-1 at 16, 51, 85, 119, 140, 152, 165,[3] the Trusts have no recourse other than to seek to compel an audit through this process.

Thus, the first *Eitel* factor supports compelling an audit.

### *(b) The Merits of the Trusts' Substantive Claims and the Sufficiency of the Complaint*

In evaluating the second and third *Eitel* factors, the Court considers the merits of the Trusts' request for an audit and whether the allegations in the complaint are sufficient to state such a claim. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

Under ERISA, a plan participant, beneficiary, or fiduciary may bring a civil action "(A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of

---

[3] The Trusts' motion and attached declaration of Kevin Wolfe state in conclusory fashion that the CBA and Trust Agreements require Defendants to submit to audits, without providing any citation to the relevant pages or provisions of the roughly 175 pages that comprise the CBA and Trust Agreements. Dkt. No. 13 at 3, 5–6, 13; Dkt. No. 17 at 6; *see generally* Dkt. No. 17-1. Furthermore, the Trusts filed only a partial version of Amendment 2003-I. Dkt. No. 17-1 at 150–53. And finally, not all documents were submitted in readable format, in violation of Section VI of the Court's Standing Order for all Civil Cases. Dkt. No. 9 at 8. Courts "are not like pigs, hunting for truffles buried in briefs[,] and cannot manufacture arguments for a[ litigant]." *Ramsey v. Muna*, 819 F. App'x 505, 507 (9th Cir. 2020) (cleaned up). The Court will summarily strike any submission in the future that is not in a compliant format, and will summarily deny any motion that does not provide specific citations to the relevant record.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 11

the plan[.]" 29 U.S.C. § 1132(a)(3). And "the trustees of trust funds, such as the Plaintiffs here, have a fiduciary duty to participants and beneficiaries that validate[s] the need for audits." *Masonry Sec. Plan of Washington v. Radilla*, No. 2:20-00350-RAJ, 2021 WL 3602517, at *3 (W.D. Wash. Aug. 13, 2021) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985)). Furthermore, the Supreme Court has stated that where a collective bargaining agreement gives the trustees of an employee benefit plan the right to audit an employer's books and records, this right can be enforced. *Cent. Transp.*, 472 U.S. at 581–82.

Here, the Trusts allege that the CBA and trust agreements grant the Trusts "authority to audit payroll books and records of a participating employer such as Defendant D&R, either directly or through a qualified public accountant, as the Trustees may deem necessary in the administration of the Trust Funds." Dkt. No. 1 at 9; *see also id.* at 6; Dkt. No. 17-1 at 16, 51, 85, 119, 140, 152, 165. The Trusts claim that despite their request to D&R to make its payroll books and records available to the Trusts' accountant, D&R "refused to cooperate" in violation of the CBA and trust agreements. Dkt. No. 1 at 9–10. Accordingly, the Trusts seek an order requiring D&R "to produce all information and documentation requested by [the Trusts] and their accountants in connection with a payroll examination of [D&R]'s books and records, in order to determine whether Defendant D&R has remitted all required fringe benefit contributions on behalf of its employees who performed work covered by the CBA." *Id.* at 10; *see also id.* at 11.

Based on the Trusts' uncontested allegations and the relevant provisions of the CBA and trust agreements, the Trusts have pleaded a sufficiently meritorious claim for relief under ERISA. *See* 29 U.S.C. § 1132(g)(2)(E); *Emp. Painters' Tr. v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at *3 (W.D. Wash. July 6, 2020); *Constr. Laborers Tr. Funds for S. California Admin. Co. v. Anzalone Masonry, Inc.*, 316 F. Supp. 3d 1192, 1201 (C.D. Cal. 2018).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 12

*(c) The Sum of Money at Stake in the Action*

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). This requires courts to assess whether the recovery sought is proportional to the harm caused by Defendants' conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014), *abrogated on other grounds by Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020).

The Trusts assert that the actual sum of money at stake in this action is "unknown" because they have been unable to conduct a full audit of D&R's payroll records. Dkt. No. 13 at 14; *see also id.* at 8–9.

Although the amount of money at stake in this action is unknown, Defendants' alleged conduct is serious: the beneficiaries of the Trusts made certain contributions, through payroll deductions, to secure the fringe benefits administered by the Trusts. D&R's failure to make contributions, and its failure to cooperate with an audit as required by contract, deprives the beneficiaries of the benefits they are entitled to under the CBA and trust agreements. The partial recovery sought in the form of an audit is an appropriate and proportional remedy for the alleged misconduct. *See Nw. Adm'rs*, 2019 WL 3986807, at *5. This factor thus favors partial default judgment.

*(d) The Possibility of a Dispute Concerning Material Facts*

As for the fifth factor, there is no indication that a genuine issue of material fact exists with respect to the Trusts' unrebutted allegation that D&R has refused to abide by its obligation to submit to an audit.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 13

*(e) Whether the Default Was Due to Excusable Neglect*

Turning to the sixth factor, the record contains no indication that Defendants' refusal to submit to an audit was due to excusable neglect. Defendants have been served and given sufficient notice of this action, Dkt. Nos. 6–7, including the Trusts' request for an audit, Dkt. No. 1 at 9–11, but have not appeared, responded to the motion, or contested the entry of default. Because there is no evidence of excusable neglect, this *Eitel* factor favors partial default judgment. *See Eve Nevada*, 2022 WL 279030, at *4.

*(f) The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Federal Rule of Civil Procedure 55(b) "indicates that 'this preference, standing alone, is not dispositive'" because Rule 55 allows a court to issue a default judgment if defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C94-2684-TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Accordingly, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of partial default judgment, especially where, as here, Defendants have failed to appear or defend and the other *Eitel* factors weigh in favor of entering a partial default judgment by compelling an audit. *See, e.g.*, *Bd. of Trustees of Emp. Painters' Tr. v. Coast Mirror Co., Inc.*, No. C22-570-MJP, 2022 WL 3925302, at *2 (W.D. Wash. Aug. 31, 2022) ("[W]hile the Federal Rules favor a decision on the merits, the Court finds that absent a default judgment Plaintiff will be stymied in its efforts to vindicate its rights and protect the rights of the covered workers to obtain any fringe benefits.").

In sum, the *Eitel* factors weigh in favor of awarding the Trusts partial default judgment by compelling an audit.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 14

## III.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Trusts motion for partial default judgment, Dkt. No. 13, and ORDERS as follows:

1. Within 30 days of the date of this Order, Defendants must submit D&R's payroll and related records to Trusts and their auditors for completion of an audit in accordance with the CBA and trust agreements, and must otherwise comply with the terms of the CBA and trust agreements related to such audit. Dkt. No. 17-1 at 16, 51, 85, 119, 140, 152, 165.

2. Should the Trusts choose to file a motion for default judgment based on the results of the audit:

   a. the Trusts must do so within 30 days of the completion of the audit; and

   b. the Trusts must serve Defendants with a copy of their motion and any supporting declarations, exhibits, or other documents, and must file proof of service within 30 days of filing the motion with the Court.

Dated this 29th day of March, 2024.

*Lauren King*

Lauren King
United States District Judge