UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOARD OF TRUSTEES OF THE
EMPLOYEE PAINTERS' TRUST et al.,

                        Plaintiffs,

      v.

D & R GLAZING, INC. et al.,

                   Defendants.

CASE NO. 2:22-cv-01831-LK

ORDER GRANTING IN PART
MOTION FOR PARTIAL
DEFAULT JUDGMENT

       This matter comes before the Court on Plaintiffs' Motion for Default Judgment. Dkt. No. 59. Plaintiffs' amended complaint seeks to recover unpaid employee benefit contributions from Defendants D & R Glazing, Inc. and its corporate governor, Peggy Owens, and to obtain an order "compelling Defendants to deliver and make available to the Trusts' auditors all information and documents for the time period of April 2022 through March 2024, necessary to permit the auditors to perform the compliance audit deemed necessary and proper by the Trusts." Dkt. No. 38 at 11.

       Although styled as a motion for default judgment, this motion seeks only an order compelling the audit and does not seek benefits at this time. Dkt. No. 59 at 11–12; *see also* Dkt.

No. 59-1 at 2–3 (proposed order). Plaintiffs state that "[o]nce the Audit can be completed and the exact amounts of fringe benefit contributions, liquidated damages, interest, audit fees, and attorney's fees and costs can be determined, the Plaintiffs will file a subsequent motion for the Court based on the results of the Audit and stating all amounts due[.]" Dkt. No. 59 at 2. The Court thus construes the motion as seeking partial default judgment, and for the reasons set forth below, grants the motion in part.

## I.    BACKGROUND

Plaintiffs Board of Trustees of the Employee Painters' Trust, Board of Trustees of the Western Glaziers Retirement Fund, Board of Trustees of the District Council No. 5 Apprenticeship and Training Trust Fund, Board of Trustees of the Washington Construction Industry Substance Abuse Program, and Board of Trustees of the Painters and Allied Trades Labor Management Cooperation Initiative (collectively, "the Trusts"), are trusts created pursuant to written trust agreements between various unions, including the International Union of Painters and Allied Trades District Council No. 5 (the "Union"). Dkt. No. 38 at 3. The Trusts provide employee benefits to plan participants under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and were created pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c) ("LMRA"). *Id.* The Union is a labor organization representing employees in the glazing and construction industry in Western Washington and surrounding areas. *Id.*

Defendant D & R Glazing, Inc., doing business as Don's A-1 Glass Service ("D&R"), is an Oregon corporation authorized and registered to do business in Washington, and Peggy Owens serves as one of its principals. *Id.* at 4. At all times relevant to this dispute, D&R was a signatory to agreements with the Union; specifically, it agreed to be bound to the terms and provisions of a collective bargaining agreement ("CBA") and certain trust agreements. *Id.* at 4–5. The Trusts

allege that the CBA has not been terminated by any party. *Id.* at 5. Among other things, the CBA and trust agreements obligate D&R to submit monthly reports showing the hours worked by its employees for covered work performed under the CBA, including for all glazing work. *Id.* Likewise, D&R is obligated to pay the Trusts "fringe benefit contributions, benefits, dues and/or withholdings for health, welfare, pension, retirement, training, and other employee benefits on a monthly basis and at specified rates for each and every hour of glazing work performed that is covered by the CBA." *Id.* at 5. The CBA also enables the Trusts to audit D&R's payroll books and records as necessary. *Id.* at 5–6.

According to the amended complaint, D&R made late monthly contribution payments for multiple time periods: August 2022 through February 2023, April 2023 through July 2023, September 2023, and November 2023 through April 2024. *Id.* at 6, 8. Despite its obligations to make monthly payments and submit monthly reports, "D&R has not submitted reports or payment of contributions since April 2024." *Id.* at 6; *see also id.* at 8. The Trusts "have requested that Defendant D&R make its payroll books and records available to an accountant retained by the Trustees of the Trust Funds in order to determine whether Defendant D&R has paid all required fringe benefit contributions to the Trust Funds . . . during the time period of April 1, 2022, through March 2024" but D&R "has refused to cooperate and grant the accountant retained by the Trustees for the Trust Funds access to its payroll books and records[.]" *Id.* at 9–10.

The Trusts initiated this action in December 2022, asserting causes of action for breach of contract and corresponding violations under ERISA, 29 U.S.C. §§ 1132(g)(2), 1145. Dkt. No. 1. They also alleged that Ms. Owens is personally liable "for the contributions and related damages owed to those trust funds by D&R" because of her role as a corporate officer. *Id.* at 10; *see also* Dkt. No. 38 at 10. The Trusts seek to recover contributions owed and related relief, including interest, liquidated damages, attorney's fees, and an order compelling D&R to undergo an audit.

1    Dkt. No. 38 at 6–12.

2         After the Trusts effected service and Defendants failed to appear or defend in this action,

3    the Clerk of Court entered default and the Trusts moved for default judgment. *See* Dkt. Nos. 6–7,

4    12–13. The Court construed their motion as one for partial default judgment, granted it in part and

5    denied it in part, and ordered Defendants to "submit D&R's payroll and related records to Trusts

6    and their auditors for completion of an audit in accordance with the CBA and trust agreements"

7    and to "otherwise comply with the terms of the CBA and trust agreements related to such audit."

8    Dkt. No. 22 at 15. Ms. Owens subsequently filed an "Objection to Default Judgment," Dkt. No.

9    23, which the Court construed as a request pursuant to Federal Rule of Civil Procedure 55(c) to

10   set aside the Clerk's entry of default and the Court's order granting in part Plaintiffs' motion for

11   default judgment, Dkt. No. 24. The Court denied that request. Dkt. No. 27 at 8.

12        The Trusts subsequently filed a motion for an order to show cause and sanctions because

13   Defendants "failed to comply with the Court's Order to produce records for an audit," Dkt. No. 29

14   at 3, and the Court ordered Defendants to show cause why the Court should not hold them in civil

15   contempt for failing to comply with the Court's March 29, 2024 Order, Dkt. No. 31 at 6. Ms.

16   Owens responded, Dkt. No. 35, and the Court subsequently discharged its order to show cause and

17   vacated the portion of its prior order granting partial default judgment to Plaintiffs because "neither

18   the complaint nor the Order specifies the relevant time period for the audit or the specific records

19   sought," Dkt. No. 36 at 2. The Court stated that if Plaintiffs wished to do so, they could file an

20   amended complaint within 30 days. *Id.* Plaintiffs filed a timely amended complaint on October 8,

21   2024. Dkt. No. 38. Plaintiffs filed proof that on October 18, 2024, they served the amended

22   complaint on D&R, Dkt. No. 43 at 2, and Ms. Owens, Dkt. No. 44 at 2.

23        After Defendants failed to respond to the amended complaint, the Trusts filed a motion for

24   default against both of them. Dkt. No. 46. The Court granted the motion as to D&R and denied it

1   without prejudice as to Ms. Owens because the Trusts did not provide her with the required notice

2   of the motion for default. Dkt. No. 48 at 1, 4; *see also* Dkt. No. 49 (Clerk's entry of default against

3   D&R). Next, the Trusts served Ms. Owens with notice of their intent to file for default against her,

4   Dkt. No. 50, and then, after nearly three weeks had passed, they filed for default, Dkt. No. 51. On

5   December 26, 2024, the Clerk entered default against Ms. Owens. Dkt. No. 53. On March 26,

6   2025, the Trusts filed this motion for default judgment, Dkt. No. 59, to which there has been no

7   response.

## II.   DISCUSSION

As the Court previously explained, it has subject matter jurisdiction over this action and personal jurisdiction over D&R and Ms. Owens. Dkt. No. 22 at 3–4. Venue is proper in this district under 29 U.S.C. § 1132(e)(2) because the alleged breach took place in this district and the Trusts are administered in this district. *Id.* at 4; *see also* Dkt. No. 38 at 2.

### A.   Legal Standard

Upon an entry of default under Federal Rule of Civil Procedure 55(a), courts have discretion to enter default judgment against the party that has failed to appear or otherwise defend in an action. *See* Fed. R. Civ. P. 55(b)(2); *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors (the "*Eitel* factors") in deciding whether to grant a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

1    On default, "the factual allegations of the complaint, except those relating to the amount of

2    damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.

3    1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). However, the

4    plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285 F.3d

5    899, 906 (9th Cir. 2002). Accordingly, "necessary facts not contained in the pleadings, and the

6    claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N.*

7    *Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

8    **B.    The Trust Funds Are Entitled to a Partial Default Judgment**

9        The Trusts seek partial default judgment in the form of an order requiring Defendants to

10    "submit their payroll and related records to Plaintiffs for completion of an audit for the time period

11    of April 1, 2022 through March 31, 2024[.]" Dkt. No. 59-1 at 2; *see also* Dkt. No. 59 at 2. The

12    Court has considered the *Eitel* factors and finds that compelling an audit is appropriate in this case

13    for the reasons discussed below.

14        1.    The Possibility of Prejudice to the Plaintiffs

15        "[P]rejudice exists where the plaintiff has no recourse for recovery other than default

16    judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014)

17    (citation and internal quotation marks omitted). Defendants have failed to respond to the amended

18    complaint, so default judgment is the Trusts' only means for relief. *See Eve Nevada, LLC v.*

19    *Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022). And because

20    Defendants have refused to cooperate in a required audit, Dkt. No. 38 at 9; Dkt. No. 60 at 3–4, the

21    Trusts have no recourse other than to seek to compel an audit through this process.

22        Thus, the first *Eitel* factor supports compelling an audit.

23

24

2.     <u>The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Amended</u>
<u>Complaint</u>

In evaluating the second and third *Eitel* factors, the Court considers the merits of the Trusts'

request for an audit and whether the allegations in the amended complaint are sufficient to state

such a claim. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

Under ERISA, a plan participant, beneficiary, or fiduciary may bring a civil action "(A) to

enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate

equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of

the plan[.]" 29 U.S.C. § 1132(a)(3). And "the trustees of trust funds, such as the Plaintiffs here,

have a fiduciary duty to participants and beneficiaries that validate[s] the need for audits." *Masonry*

*Sec. Plan of Washington v. Radilla*, No. 2:20-00350-RAJ, 2021 WL 3602517, at *3 (W.D. Wash.

Aug. 13, 2021) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S.

559, 571 (1985)). Furthermore, the Supreme Court has stated that where a collective bargaining

agreement gives the trustees of an employee benefit plan the right to audit an employer's books

and records, this right can be enforced. *Cent. Transp.*, 472 U.S. at 581–82.

Here, the Trusts allege that the CBA and trust agreements grant the Trusts "authority to

audit payroll books and records of a participating employer such as Defendant D&R, either directly

or through a qualified public accountant, as the Trustees may deem necessary in the administration

of the Trust Funds." Dkt. No. 38 at 5; *see also id.* at 9. The CBA and trust agreements confirm that

authority. Dkt. No. 61-1 at 16 (CBA); Dkt. No. 61-2 at 25 (Amended and Restated Trust

Agreement of the Employee Painters' Trust); Dkt. No. 61-3 at 26 (Amended and Restated Trust

Agreement of the Western Washington Glaziers Retirement Fund); Dkt. No. 61-4 at 26 (Restated

and Amended District Council No. 5 Apprenticeship and Training Trust Agreement); Dkt. No. 61-

5 at 26 (Trust Agreement Governing the Washington Construction Industry Substance Abuse

Program Trust Agreement); Dkt. No. 61-6 at 21–22 (Agreement and Declaration of Trust of the Painters and Allied Trades Labor-Management Cooperation Initiative). The Trusts claim that despite their request to D&R to make its payroll books and records from April 2022 to March 2024 available to the Trusts' accountant, D&R "refused to cooperate" in violation of the CBA and trust agreements. Dkt. No. 38 at 9–10. And they note that "Plaintiffs have received documents from employees of D&R showing potential payroll deductions errors during the audit period that will need to be reviewed and investigated as part of the audit process." *Id.* at 6. Accordingly, their amended complaint seeks an order requiring D&R "to produce all information and documentation requested by [the Trusts] and their accountants in connection with a payroll examination of [D&R]'s books and records, in order to determine whether Defendant D&R has remitted all required fringe benefit contributions on behalf of its employees who performed work covered by the CBA." *Id.* at 10. The Trusts aver that the following information is necessary:

> 1. Payroll: Records that include Hours worked and Wages earned, detailed by day, week or month;
>
> 2. Employee information: A list/roster (preferably in excel) with Dates of Hire, Dates of Termination, and Job Description/Class/Trade for all employees;
>
> 3. Subcontractor information: 1099 for all subcontractors used during the audit period (or confirmation if no subcontractors were used for bargaining unit work during the audit period); and
>
> 4. State Unemployment information: Federal form 941, any state tax reports (e.g., Oregon form 132, Washington State Unemployment report, Quarterly Wage Reports, etc.), and general ledgers for Quarter 1 of 2024.

Dkt. No. 59 at 5; *see also* Dkt. No. 60 at 3; Dkt. No. 60-3.

Based on the Trusts' uncontested allegations and the relevant provisions of the CBA and trust agreements, the Trusts have pleaded a sufficiently meritorious claim for relief under ERISA. *See* 29 U.S.C. § 1132(g)(2)(E); *Emp. Painters' Tr. v. Dahl Constr. Servs., Inc.*, No. C19-1541-RSM, 2020 WL 3639591, at *3 (W.D. Wash. July 6, 2020); *Constr. Laborers Tr. Funds for S.*

1    *California Admin. Co. v. Anzalone Masonry, Inc.*, 316 F. Supp. 3d 1192, 1201 (C.D. Cal. 2018).

2           3.      <u>The Sum of Money at Stake in the Action</u>

3           Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in

4    relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.

5    2d 1172, 1176 (C.D. Cal. 2002). This requires courts to assess whether the recovery sought is

6    proportional to the harm caused by Defendants' conduct. "Default judgment is disfavored where

7    the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel*

8    *v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014), *abrogated on other grounds by*

9    *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020).

10           The Trusts assert that the actual sum of money at stake in this action is "unknown" because

11    they have been unable to conduct a full audit of D&R's payroll records. Dkt. No. 59 at 9. Although

12    the amount of money at stake is unknown, Defendants' alleged conduct is serious: the beneficiaries

13    of the Trusts made certain contributions, through payroll deductions, to secure the fringe benefits

14    administered by the Trusts. D&R's failure to make contributions, and its failure to cooperate with

15    an audit as required by contract, deprives the beneficiaries of the benefits they are entitled to under

16    the CBA and trust agreements. The partial recovery sought in the form of an audit is an appropriate

17    and proportional remedy for the alleged misconduct. *See Nw. Adm'rs, Inc. v. Nat'l Express Transit*

18    *Servs. Corp.*, No. 2:19-CV-00744 WBS AC, 2019 WL 3986807, at *5 (E.D. Cal. Aug. 23, 2019),

19    *report and recommendation adopted*, 2019 WL 4412389 (E.D. Cal. Sept. 16, 2019). This factor

20    weighs in favor of a partial default judgment.

21           4.      <u>The Possibility of a Dispute Concerning Material Facts</u>

22           As for the fifth factor, there is no indication that a genuine issue of material fact exists with

23    respect to the Trusts' unrebutted allegation that D&R has refused to abide by its obligation to

24    submit to an audit.

5.      Whether the Default Was Due to Excusable Neglect

Turning to the sixth factor, the record contains no indication that Defendants' refusal to submit to an audit was due to excusable neglect. Defendants have been served and given sufficient notice of this action, Dkt. Nos. 6–7, 43–44, including the Trusts' request for an audit, Dkt. No. 38 at 9–11, but they have not responded to the amended complaint or this motion, or contested the entry of default. Because there is no evidence of excusable neglect, this *Eitel* factor favors partial default judgment. *See Eve Nevada*, 2022 WL 279030, at *4.

6.      The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Federal Rule of Civil Procedure 55(b) "indicates that 'this preference, standing alone, is not dispositive'" because Rule 55 allows a court to issue a default judgment if defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C94-2684-TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)). Accordingly, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of partial default judgment, especially where, as here, Defendants have failed to contest this motion and the other *Eitel* factors weigh in favor of entering a partial default judgment by compelling an audit. *See, e.g.*, *Bd. of Trustees of Emp. Painters' Tr. v. Coast Mirror Co., Inc.*, No. C22-570-MJP, 2022 WL 3925302, at *2 (W.D. Wash. Aug. 31, 2022) ("[W]hile the Federal Rules favor a decision on the merits, the Court finds that absent a default judgment Plaintiff will be stymied in its efforts to vindicate its rights and protect the rights of the covered workers to obtain any fringe benefits.").

In sum, the *Eitel* factors weigh in favor of awarding the Trusts partial default judgment by compelling an audit.

1    **C.      The Trust Funds' Relief**

2         Having determined that a default judgment is warranted, the Court turns to the Trust Funds'

3    relief. As set forth above, when, as here, a collective bargaining agreement gives the trustees of an

4    employee benefit plan the right to audit an employer's books and records, Dkt. No. 38 at 5–6, this

5    right can be enforced, *Cent. Transp.*, 472 U.S. at 581–82. *See also Walters v. Shaw/Guehnemann*

6    *Corp.*, No. 03-cv-04058 WHA, 2004 WL 1465721, *3 (N.D. Cal. April 14, 2004) ("Where a

7    collective-bargaining agreement gives trustees of an employee-benefit plan the right to audit an

8    employer's records, that right will be enforced. Therefore, plaintiffs' request for this Court to

9    enjoin defendants to submit to the aforementioned audit is reasonable." (internal citation omitted));

10   *Masonry Sec. Plan of Wash. v. Hallin*, No. C22-0218-TSZ, 2023 WL 3043847, at *2 (W.D. Wash.

11   Apr. 21, 2023); *Employee Painters' Tr. v. Dahl Constr. Servs.*, No. C19-1541-RSM, 2020 WL

12   3639591, at *4 (W.D. Wash. July 6, 2020) (allowing an audit of Defendants' records and retaining

13   jurisdiction "in order to enter an amended judgment upon the determination of the total amounts

14   owed by Defendants."). The Court thus grants this relief and directs D&R and Ms. Owens to

15   submit D&R's payroll and related records to Plaintiffs within 30 days of the date of this Order for

16   completion of an audit as set forth below.[1]

17        The Trusts also request that the Court "retain jurisdiction over this matter in order to enter

18   an Amended Judgment upon the determination of the total amounts owed to Plaintiffs by

19   Defendants." Dkt. No. 59 at 12. The Court retains jurisdiction because this matter is not concluded;

20   the Trusts are requesting—and the Court is granting—only a partial default judgment. The Court

21   thus denies as moot the Trusts' request that the Court retain jurisdiction.

22

23   [1] Ms. Owens is a corporate officer responsible for "keeping corporate records and company books, managing financial affairs, payment of expenses and accounts payable, tracking employee hours, preparing and processing payroll and remitting reports, contributions and payments to the Trust Funds for each hour of covered labor performed." Dkt. No.

24   38 at 4. The Trusts thus allege, and Defendants do not dispute, that the documents sought are within her custody or control. She is also sued in her personal capacity. *Id.* at 10–11.

The Court also denies as premature the Trusts' request that the Court find now that "upon completion of the audit, plaintiffs are entitled to an award of all unpaid contributions, interest, liquidated damages, attorney's fees, court costs, and costs of the audit." Dkt. No. 59 at 7 (capitalization removed); *see also* Dkt. No. 59-1 at 3 (including in proposed order "that upon entry of final judgment, the Plaintiffs are entitled to post-judgment interest at the highest rate allowed by law. The amount of such interest will be established by proof at trial or through dispositive motion."). To the extent that the Trusts suggest they do not need to move for another default judgment when they seek damages, interest, and fees, they are incorrect. This is not a case where the Trusts have moved for and obtained a default judgment for some unpaid contributions, subject to potential augmentation following an audit. *See, e.g.*, *Walters*, 2004 WL 1465721, *4. Rather, the Court has not yet found that any unpaid contributions or associated damages, interest, and fees are due. Consequently, if the Trusts later seek such payments following the audit, they must file a motion for default judgment (potentially following a supplemental complaint, Fed. R. Civ. P. 15(d)) that addresses the *Eitel* factors—including the amount of money at stake in the action, which is presently unknown—and otherwise complies with the Court's Standing Order for All Civil Cases to establish all amounts allegedly owed. Dkt. No. 9 at 8–9.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' motion for partial default judgment, Dkt. No. 59, and ORDERS that Ms. Owens and D&R must submit D&R's payroll and related records to Plaintiffs within 30 days of the date of this Order for completion of an audit for the time period of April 1, 2022 through March 31, 2024, including the following records:

1. <u>Payroll</u>: Records that include hours worked and wages earned, detailed by day, week or month;

2. <u>Employee information</u>: A list/roster (preferably in excel) with dates of hire, dates of termination, and job description/class/trade for all employees;

3. <u>Subcontractor information</u>: Federal form 1099 for all subcontractors used during the audit period (or confirmation if no subcontractors were used for bargaining unit work during the audit period); and

4. <u>State Unemployment information</u>: Federal form 941, any state tax reports (e.g., Oregon form 132, Washington State Unemployment report, Quarterly Wage Reports, etc.), and general ledgers for Quarter 1 of 2024.

Should the Trusts choose to file a motion for default judgment based on the results of the audit:

    a.  the Trusts must do so within 30 days of the completion of the audit;

    b.  the motion for default judgment must address the *Eitel* factors and otherwise comply with the Court's Standing Order for All Civil Cases to establish all amounts allegedly owed, Dkt. No. 9 at 8–9; and

    c.  the Trusts must serve Defendants with a copy of their motion and any supporting declarations, exhibits, or other documents, and must file proof of service with the motion.

If Plaintiffs determine after the audit that no further relief is warranted, they must file a notice with the Court within 30 days of completing the audit so stating and voluntarily dismissing the case if warranted.

Dated this 7th day of July, 2025.

Lauren King
United States District Judge

ORDER GRANTING IN PART MOTION FOR PARTIAL DEFAULT JUDGMENT - 13